Vah Voorhis, J.
(dissenting). The question arising from this submitted controversy is whether the landlord is entitled to the fixation of a reasonable rent in excess of the emergency rent pursuant to section 4 of the Business and Commercial Rent Laws (L. 1945, ch. 314, as amd.; L. 1945, ch. 3, as amd.). Portions of the building come within each of these acts, but the language of the sections is the same, so that it is treated as a single question. This concerns the alternative proceeding instituted under the second paragraph of section 4 of the Business and Commercial Rent Laws as amended by chapter 534 of the Laws of 1949. The leases provide for payment of percentages of gross receipts from sales by the tenants, in addition to fixed monthly rentals and are known as variable leases. They have expired or are about to expire. This action is brought for a declaratory judgment to determine the respective rights of the parties upon the expiration of these leases. Whether the valuation of the premises justifies a rent increase is not involved; the question is simply what formula is to be applied.
*303 The tenants contend that section 13 of the Business Bent Law and the corresponding section 14 of the Commercial Bent Law, relating to variable and graduated leases, renders section 4 inapplicable to variable leases.
In 1948 the landlord in this case instituted a proceeding against all but four of the tenants of the premises, seeking a reasonable return from the building under the then existent provisions of section 4 of these statutes. The so-called alternative proceeding under section 4 had not yet been enacted by chapter 534 of the Laws of 1949. In that proceeding, the landlord was successful at Special Term before McNally, J., in establishing its right to the fixation of a “ reasonable ” rent under section 4 in a definite monthly amount to be determined by the court, at the expiration of the variable leases, in substitution for the monthly basic rent and the percentage of gross rents provided thereby (Cortlandt & Dey Streets Corp. v. New York Lerner Co., 84 N. Y. S. 2d 9). An appeal was taken by some of the tenants, but before it was heard the entire proceeding was discontinued by stipulation, apparently in order to enable the landlord to institute an “ alternative ” proceeding under the 1949 amendment. The landlord is now embarrassed in maintaining the alternative proceeding, owing to the amendment to section 4 enacted by the chapters 326 and 327 of the Laws of 1950, which limits recovery in the alternative proceeding to an amount not more than 15% greater than the amount of the rent being paid by the tenant in the previous year. This may result in the landlord’s withdrawing the pending alternative proceeding, and again instituting the older type of proceeding which was passed upon by Justice McNally.
As matters now stand, the alternative proceeding is pending, and all that we are called upon to determine on this application for a declaratory judgment upon submitted facts, is whether a proceeding under section 4 to determine the reasonable rent in excess of the emergency rent is maintainable where an expired variable lease is concerned. The answer to this question depends upon whether sections 13 and 14 of these acts mean that the only recourse of a landlord, upon the expiration of such a lease, is to continue indefinitely under its terms except for the addition of 15% to the basic rent as the emergency rent or, if 15% cannot be added to the fixed monthly rent under the majority opinion’s interpretation of chapters 326 and 327 of the Laws of 1950, then to adjust the fixed monthly rent to approximate the rent paid for the most nearly comparable space. It would appear to make little difference to whether a proceeding under *304 section 4 is maintainable — though it would bear upon the amount of rent to be fixed — whether the landlord has applied for a reasonable rent under subdivision 1 or on a square footage basis under subdivision 2 of section 4, as now amended by chapter 326 of the Laws of 1950, which imposes a 15% ceiling upon increases in rental during a single year in proceedings brought under subdivision 2.
We are not called upon, at this time, to determine the exact method óf applying to a variable lease the 15% ceiling placed over annual increases under subdivision 2 of section 4, added by chapters 326 and 327 of the Laws of 1950. It is enough to observe, in that connection, that we think that determination of such a ceiling in the case of variable leases is not so impossible as to indicate that the Legislature intended that section 4 should not apply to expired leases of that character.
If the applicability of section 4 to expired variable leases is decided in this declaratory judgment action, such a determination will not be affected (although the amount to be recovered would be) by whether the landlord withdraws the proceeding under subdivision 2 and institutes another under subdivision 1.
Directing attention to the basic question whether the Legislature intended to extend to variable leases either proceeding authorized by section 4 for the fixation of a reasonable rent in excess of the emergency rent, it is necessary to analyze further section 13 of the Business Bent Law and section 14 of the Commercial Bent Law which are cited as being exclusive with reference to the procedure respecting such leases. They relate to variable and graduated leases. These are different types of lease, a variable lease being defined as one “ wherein the specified rent or any part thereof is variable according to volume or other criteria of volume of the tenant’s business ”, and a graduated lease being defined as one ‘1 wherein the rental stipulated is in a graduated scale.” These sections undertake to define what shall be the emergency rent in the case of these two types of lease. If a graduated lease has been in effect, “ upon the expiration of such lease, the emergency rent shall be a reasonable rent to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged for the most nearly comparable commercial [or business] space in the same building or other rental area * * *. Pending the fixation of such reasonable rent, without prejudice to their respective rights, the tenant shall pay and' the landlord may accept rent upon the basis charged during the last month of the expired lease.” Sections 13 and 14 thus provide, in the *305 instance of a graduated lease, that for the duration of the lease it shall be enforced according to its terms without regard to statutory enactments prescribing an “ emergency ” or a “ reasonable ” rent applicable to other kinds of lease, and that upon the expiration thereof, if the tenant remains in possession, the rent shall be determined in accordance with the rent charged for the most nearly comparable space or other rental area. Bent thus fixed on expiration of a graduated lease, is defined by sections 13 and 14 as being both an emergency rent and a reasonable rent. It is to be arrived at by criteria different from those applicable in determining the “ emergency ” rent or the “ reasonable ” rent under the usual type of lease.
Sections 13 and 14 define merely what is the emergency rent but not the reasonable rent in case of variable leases. Payment of the percentage rent in such a lease, it is provided, “ shall continue without change, but where such lease provides for the payment of a fixed, basic or minimum rent, such fixed amount shall be subject to the provisions of this act, including all of the provisions of this section.” That sentence defines what constitutes the emergency rent for a variable lease, but does not purport to define what shall be the reasonable rent, and certainly does not state that in case of a variable lease, unlike all other leases, there shall be no procedure for the fixation of a reasonable rent. It was evidently not the intention of the Legislature to freeze variable leases after their expiration for the indefinite future, unlike the legislative treatment of every other type of lease, even with the addition of 15% to the fixed or basic rental, without being subject to change in accordance with changes in circumstance. It is particularly unlikely that the Legislature would have singled out as the one unchangeable item in the fixation of rent in statutory landlord and tenant relationships, rentals computed upon the volume of the tenant’s business, which is more liable to change and less likely to remain stabilized than any other feature which could have been selected. Since sections 13 and 14 contain no provision for the fixation of a reasonable rent at the end of the terms of variable leases, the rational interpretation is that the legislative intent was that the emergency rent should be computed in an amount 15% in excess of the fixed rent on the freeze date, plus the stipulated percentage rent but that, in the alternative, the determination of a reasonable rent should be left to a proceeding under section 4 of the acts. Our statement in Matter of 500 Fifth Ave. (Wise Shoe Co.) (274 App. Div. 241, 243, affd. 300 N. Y. 491) that “ The variable lease does *306 not lend itself to the emergency rent formula except in respect to a fixed minimum rent and it was considered fair and equitable that such leases should be continued in accordance with their terms except for the application of the 15% emergency rent increase to the minimum rent figure ”, meant simply that such was the formula for determining the emergency rent; it had nothing to do with what should be done to establish a ‘ ‘ reasonable ” rent in the conception of section 4. The statement by McNally, J., was correct that the Wise Shoe Co. case (supra) concerned only the emergency rent (84 N. Y. S. 2d 9, 11). The Wise Shoe Co. case (supra) was a proceeding instituted under section 13 on the theory that a graduated lease was involved, in which the court was asked to determine the emergency or reasonable rent under that section on the basis of the most nearly comparable space. It was held that the landlord was not entitled to the fixation of such a rent, inasmuch as the instrument was not a graduated but a variable lease. The landlord’s petition was therefore dismissed. No application was made to the court in the Wise Shoe Co. case (supra) bn the theory that it was a variable lease, and this court observed, in that connection, that upon the expiration of a variable lease the emergency rent is to be arrived at by adding 15% to the basic minimum rental, leaving the percentage rent the same. This court discussed the emergency rent in these two types of lease after expiration of term, stating (p. 243): “It may be seen, therefore, that the opposite treatment was given to the two types of lease in determining the rent to be paid after the expiration of the lease. The variable lease was substantially preserved and the graduated lease was abrogated.” That was stated to be what happens in determining the emergency rent in these types of lease upon expiration of term. It was held that the emergency rent in the case of a variable lease is not to be fixed in the manner provided by section 13 of the Business Bent Law for a graduated lease; nor does it seem to us that the amendment to section 13 by chapter 326 of the Laws of 1950, on which the majority opinion herein turns, that the basic rent in variable leases should be “ subject to the provisions of this act including all of the provisions of this section ” (adding the italicized words) was intended to change this ruling. The italicized words refer to provisions in the section which apply to variable leases, not such as by their language relate only to graduated leases. Certainly the sentence in sections 13 and 14 next following the words inserted by the 1950 amendments was not designed to apply to variable leases, since by its wording *307 it is confined to graduated leases which are dealt with differently by the section. If the conclusion of the majority be correct, that it was the intention of . the 1950 Legislature to place the determination of the fixed, basic or minimum rent under sections 13 and 14 at the end of variable leases on a parity with the fixation of the entire rent upon the expiration of graduated leases, the words would not have been left in the statutes that in fixing the emergency rent for a variable lease, unlike a graduated lease,, the basic rent shall be arrived at in accordance with the other provisions of the act as well as those of sections 13 and 14. The parties in the Wise Shoe Co. case (supra) were left where they were upon coming into court, continuing to pay the emergency rent for a variable lease computed by adding 15% to the basic rent. Tet, if the 1950 amendment had the effect ascribed to it by the majority opinion, the Legislature must have intended to overrule that decision, since, under the majority ruling herein, it necessarily follows that the emergency basic rent in a variable lease is to be arrived at in the same manner as in case of a graduated lease, which is not measured by adding 15% but by comparability. Becourse to other portions of the act is necessary if the emergency rent in a variable lease is to be determined in the manner described in the Wise Shoe Co. case (supra) by adding 15% to the basic rent. Section 13 contains no mention of adding 15% in any type of lease. The emergency rent and reasonable rent for graduated leases are defined by sections 13 and 14 as being identical. If the construction by the majority of the 1950 amendment be correct, that the provisions of sections 13 and 14 authorize and require the same procedure for the fixation of a reasonable basic rent in a variable lease, as they do for the entire rent in a graduated lease, and that the rest of the act cannot be resorted to in order to establish or supplement the procedure, such reasoning requires that sections 13 and 14 alone be held to regulate the procedure for determining the emergency rent in a variable lease. That would mean that the 1950 Legislature, by this merely formal amendment, overruled the Wise Shoe Co. case (supra). If such an important result had been intended, it would have been done in language better adapted to that purpose. We do not adopt the construction placed upon the Wise Shoe Co. case (supra) in Matter of J. A. Kennedy Realty Corp. (C. Ludwig Baumann & Co.), (277 App. Div. 790 [2d Dept.]) decided since the argument of this appeal. But the rulings in both the Wise Shoe Co. case (supra) and the J. A. Kennedy Realty *308 Corp. case (supra) would appear to have been materially altered by the effect given by the majority of this court herein to chapters 326 and 327 of the Laws of 1950.
Unlike the disposition made of graduated leases by the Legislature under sections 13 and 14, resort must still be had, as we think, to other provisions of the act in order to determine what shall be done upon the expiration of a variable lease. Thus, if the emergency rent is to be paid, reference needs to be made to subdivision (c) of section 2 for adding 15% to the basic or minimum rent in order to determine the emergency rent. What was said about this in the Wise Shoe Co. case (supra) still holds true. By the same token, if the landlord elects to apply for a reasonable rent in excess of the emergency rent, reference is made to section 4. At the expiration of a variable lease, the landlord has the alternative of continuing with the emergency rent, if the tenant desires to remain or, if the facts justify it, he may apply for the determination of a “ reasonable ” rent under section 4 in lieu of the former combination of a basic rent plus a percentage upon the volume of the tenant’s business. It is noteworthy that in Twentieth Century Associates v. Waldman (294 N. Y. 571, 581) speaking of section 4, the Court of Appeals said concerning the emergency rent laws as a whole: ‘‘ Certainly there was nothing arbitrary or unreasonable in the remedy which the Legislature applied, providing, as it did, for arbitration or judicial determination of fair and reasonable rentals in all cases. * * * Judicial determination of a reasonable rent was thus made available to the landlord in every case.” Such a construction was placed upon these statutes when their constitutionality was upheld.
The cases referred to in plaintiffs’ briefs, which are cited in support of the conclusion that a reasonable rent under section 4 cannot be fixed in excess of the emergency rent upon the expiration of a variable lease, have been examined carefully. They do not lead to that result. Either graduated leases were involved, or the leases had not expired, or the controversy related to whether the landlord was entitled to charge as much as an emergency rent computed at 15% in excess of the basic or rm'm'mnm rent on freeze date plus the percentage of the tenant’s gross receipts. None of the cited cases involved the question whether a reasonable rent could be obtained under section 4 in excess of the emergency rent after the expiration of a variable lease, except the case of J. A. Kennedy Realty Corp. which has been mentioned above.
*309 If no proceeding to fix such a rent can be maintained, then the Legislature has left the situation such that for the duration of the emergency no change can be made, at the landlord’s instance, in the emergency rental in the case of variable leases. There is no reason to believe that the Legislature intended to discriminate in this respect against variable leases, nor to deny the right, after expiration of term, to the fixation of a reasonable rent in excess of the emergency rent. The quotation from the opinion by the Court of Appeals in Twentieth Century Associates v. Waldman (supra) set forth above, indicates that the Legislature had no such discriminatory purpose. The landlord may in our view continue to receive the emergency rent (15% in excess of basic monthly rent on the freeze date plus the percentage of gross receipts), after such a lease has expired but, as with the ordinary type of lease, he may, at his election, apply for a “ reasonable ” rent, as defined by section 4, in event that under the facts of the particular case such a rent would be greater than the amount of the emergency rent. As this court stated in £he Wise Shoe Co. case (supra) a landlord may not obtain a “ reasonable ” rent plus a percentage of the gross receipts. If he gives up the percentage, however, then there is no reason on account of which a “ reasonable ” flat rental should not be permitted under section 4 if the rental space is worth it.
If the amendment to sections 13 and 14 enacted by chapters 326 and 327 of the Laws of 1950 is construed to render inapplicable to variable leases other provisions of the emergency rent laws, and to substitute in place of a section 4 proceeding to determine the reasonable rent, an adjustment of the fixed monthly rental so as to correspond to the rent paid for the most nearly comparable rental area, there are likely to be unexpected results. It would mean that the landlord would continue to receive the same percentage of the volume of the tenant’s business as was payable before expiration of the lease and, in addition, a fixed monthly rent as great as the entire rent paid for the most nearly comparable space. That would result in giving the landlord a bonus in the amount of the percentage rent over and above the full rental paid for similar rental areas. The only alternatives to this, if comparability is the criterion, would require using the sum total of the percentage rent and basic rent for purposes of comparison, which the Legislature hardly intended, or to compare the basic rent with other rental areas also under variable leases. The latter would, in practice, be equivalent to ruling out any procedure under which the *310 reasonable rent conld be determined, since it would be impossible to find comparable space occupied by a tenant conducting a comparable business who had agreed to pay his landlord the same percentage of his gross receipts.
The majority opinion selects the alternative of combining the percentage rent and basic rent for purposes of comparison with other rental areas, but that is really altering indirectly the percentage rent which the statute under this view requires shall continue without change. It may also be noted that, if it be practicable to establish the amount of the percentage rent by competent evidence for this purpose, that is, in itself, an answer to the reasoning that it would be impracticable to do so in order to apply the 15% ceiling imposed in 1950 upon annual increases pursuant to subdivision 2 of section 4. The asserted impracticability of doing the latter was urged as an indication that the Legislature did not intend section 4 to apply to variable leases.
Declaratory judgment should be entered in favor of defendant in accordance with this opinion.
Does, J., and Shieettag, J., concur with Gleetetoet, J.; Vast Voobhis, J., dissents and votes to enter declaratory judgment in favor of defendant in opinion in which Peoic, P. J., concurs.
Judgment directed in favor of the plaintiffs, without costs, in accordance with the stipulation. Settle order on notice.